[Dkt No. 65, 74]

```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY
                    CAMDEN VICINAGE
```

| | |
|---|---|
| ROBIN DAVIS,<br><br>    Plaintiff,<br><br>        v.<br><br>ALLSTATE INSURANCE d/b/a<br>ALLSTATE NEW JERSEY, et al.,<br><br>    Defendants. | Civil No. 16-1202<br><br>**OPINION** |

APPERANCES:

STERLING LAW FIRM
By: Yvette C. Sterling, Esq.
1818 Old Cuthbert Road, Suite 202B
Cherry Hill, New Jersey 08016
        Counsel for Plaintiff

COZEN O'CONNOR
By: Debra S. Friedman, Esq.
    Jason A. Cabrera, Esq.
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
        Counsel for Defendants

**BUMB, UNITED STATES DISTRICT JUDGE**:

    This matter comes before the Court upon the parties' cross-motions for summary judgment in this employment discrimination and retaliation suit. For the reasons set forth below, the Court will grant summary judgment to Defendants on the claims arising under federal law (failure to accommodate and

retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., "ADA"), and will direct the parties to show cause why the Court should not decline to exercise supplemental jurisdiction over the remaining state law claims brought pursuant to the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 et seq., "NJ LAD", and New Jersey common law, and remand this suit to the Superior Court of New Jersey.[1]

I. **Facts and Procedural History**

Plaintiff Robin Davis has been employed with Defendant Allstate Insurance since 1986. (Plaintiff's Response to Defendants' Statement of Undisputed Material Facts, hereafter "Pl's Response to Def's Statement", ¶ 2) During all relevant times, Davis was (and still is) a Claim Service Leader in Allstate's homeowner department. (Id.) Defendant Jeffrey Dwyer was Davis' supervisor from December 2013 through March 2016. (Id. ¶ 4-6)[2]

According to Davis, as a result of Dwyer's alleged race, gender, and age discrimination / retaliation, and/or creation of

---

[1] The Court exercises federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

[2] It is undisputed that Dwyer has been Davis' supervisor for "most of [Davis'] career at Allstate." (Pl's Response to Def's Statement ¶ 4) However, Davis' ADA claims are based on events that occurred during the December 2013 – March 2016 time period. Defendant Dressel was Dwyer's boss. (Davis Dep. p. 99)

1

a hostile work environment[3], Davis developed "stress related disorder, adjustment disorder with anxiety and depression." (Pl's Response to Def's Statement ¶ 73)[4] On February 24, 2014, Davis first wrote to Allstate's Human Resources representative complaining about Dwyer:

> Annette –
>
> In 2007, a study conducted by the Employment Law Alliance (ELA) found that 44 percent of employees have at one time been victims of an abusive boss.
>
> After just celebrating my 28th anniversary at Allstate (1/6/86), regrettably I feel that I too have been and continue to be a victim of an abusive boss.
>
> This letter has two purposes:
> I would like to advise you that I am formally submitting a complaint about MCM and CPS Jeff Dwyer and I am using this letter to serve as my initial documentation.
>
> The substance of my complaint is that on or about January 2006, my team of theft adjusters and I felt harassed, bullied and disrespected by Jeff as a result of him being the only NJ MCM who did not qualify for the 2006 Distinguished Leaders trip to Boca Raton, Florida.
>
> Unfortunately this problem has continued with additional instances occurring intermittently up to the writing of this letter.

---

[3] Davis alleges that Dwyer created a hostile work environment which was not limited to Davis' race (African American), her gender (female), and her age (over 50). For example, Davis alleges that Dwyer criticized her for being a "liberal" and "made verbal bullying remarks about [her] performance." (Davis Cert. ¶ 13, 7).

[4] Davis testified, "I have a disability in which working for Jeff causes me anxiety and depression." (Davis Dep. p. 119) It is undisputed that "Mr. Dwyer was the trigger for" Davis' condition. (Pl's Response to Def's Statement ¶ 75) See also, Davis Dep. p. 61 (Q: And how would you describe your issue? A: My issue is targeted. Jeff had an agenda toward me.").

2

My initial reaction to the occurrences is to confront Jeff.

Allstate requires that I manage and regulate my behavior and actions in a professional manner at all times and without exception. To which I align and agree.

I found it extremely difficult, stressful and intimidating to attempt to confront a corporate bully armed only with my professional conduct.

After exhausting a great deal of thought and emotional distress, I have decided to present you with this information.

We are all to be guided by and aligned with:
- The Allstate Partnership
- Our Shared Vision
- Maintaining Positive Employee Relations – The Role of the Manager
- Claims Compass

- Organizational Success Factors

I truly believe that it is not company intent or policy to permit such instances to occur without a review of the circumstances.

I am requesting an opportunity to meet with you in order to provide additional details.

I recall that less than three short months ago my overall work environment was pleasant, professional and I was treated with dignity and respect.

My hope is that the situation will be resolved by restoration of the work environment meant to be created by Allstate's continuous promotion of:

- Maintaining Positive Employee Relations – The Role of the Manager
- Inspirational Leadership – Actions Speak Louder than Words workshop
- Claims Compass
- Our Shared Vision
- The Allstate Partnership
- Organizational Success Factors

I appreciate your review of this matter.

> I have always enjoyed my work responsibilities for our company. I hope you will recognize my attempts to rectify a situation that to me, has become unbearable.
>
> Sincerely,
>
> Robin D Davis, FPL

(Friedman Decl. Ex. L)

In emails to Human Resources dated March 31, 2014 and April 1, 2014, Davis inquired into the status of her "open complaint" and further stated that "my work environment continues to make me uncomfortable," "I feel that I am being targeted by Jeff," and "I feel that Jeff's actions towards me are racially motivated." (Friedman Decl. Ex. M)

Also on April 1, 2014, Davis began a six-month disability leave of absence from work. (Pl's Response to Def's Statement, ¶ 72) Davis' healthcare provider completed Allstate's "Workplace Assistance Request" form which documented Davis' "medical condition." (Davis Cert. Ex. 29) The request states that "[Davis] has been struggling with anxiety & depressed mood related to her place of employment since February 2014." (Id.) It further states that "client's direct supervisor causing [sic] anxiety (severe)," and that Davis cannot work at all "unless conflict with superior resolved [sic] & client feels safe." (Id.)

4

Approximately two weeks later, Davis' attorney wrote to Allstate, stating, in relevant part,

> Dear Ms. Geller:
>
> Please be advised that the above-named firm has been engaged by Ms. Davis, who is employed by your company, to review the recent issues she has been experiencing, which has impacted her health and her employment with AllState.
>
> Obviously it is Ms. Davis' hope to continue to work with Allstate until her retirement. However, she has recently experienced severe mental anguish based upon the working environment which has become hostile due to the actions and statements made to her by her supervisor, Jeffrey Dwyer.
>
> Ms. Davis voiced some of these concerns to you in her letter dated February 24, 2014. However, these hostilities did not diminish; instead they escalated and have caused Ms. Davis severe emotional anguish resulting in her being out on medical leave.

(Friedman Cert. Ex. T)

While Davis was still on leave, in a June 24, 2014 email to Allstate, Davis' attorney wrote, in relevant part, "[Davis'] disability was directly caused by [Dwyer's] illegitimate actions under US laws and the New Jersey Law Against Discrimination." (Friedman Cert. Ex. U)  Davis' attorney requested an "accommodation" in the form of "be[ing] relocated to another location."  (Id.)

In an email dated August 21, 2014, Davis' attorney again wrote to Allstate, "based upon the fact that Ms. Davis has to return to work to environment and a supervisor that causes her emotional anguish due to his maltreatment of her because of her race and color, Ms. Davis is requesting to be removed from that

hostile work environment which has been created by her supervisor." (Friedman Cert. Ex. Q)

Davis' testimony regarding her accommodation request is unequivocal:

> Q: Just so I understand, is the accommodation you were looking for to be moved to a different job?
>
> A: I needed to be not working for Jeff.
>
> Q: Okay. So the accommodation you were looking for was to no longer report to Jeff Dwyer?
>
> A: Yes.
>
> Q: Was that the only accommodation that you were looking for?
>
> A: Yes.

(Davis Dep. p. 100-01)

It is undisputed that when Davis returned from disability leave in September 2014, she still reported to Dwyer. In March 2016, Dwyer was promoted, and Michael Cybularz became Davis' supervisor. (Pl's Response to Def's Statement ¶ 8; Davis Cert. ¶ 53) Davis testified that she has "no problems" with Cybularz as her supervisor. (Davis Dep. p. 18, 55)

This suit was removed to this Court by Defendants on the basis of federal question subject matter jurisdiction. The Complaint asserts eight counts: (1) failure to accommodate disability discrimination in violation of the NJ LAD and ADA; (2) age discrimination in violation of the NJ LAD; (3)

retaliation in violation of the NJ LAD and ADA; (4) hostile work environment race discrimination in violation of the NJ LAD; (5) "hostile work environment" in violation of the NJ LAD; (6) disparate treatment race discrimination in violation of the NJ LAD; (7) gender discrimination in violation of the NJ LAD; and (8) intentional infliction of emotional distress.

## II. Summary Judgment Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might impact the "outcome of the suit under the governing law." Gonzalez v. Sec'y of Dept of Homeland Sec., 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. Id.

In determining the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable inferences and doubts should be resolved in favor of the nonmoving party. Melrose, Inc. v. City of Pittsburgh, 613 F.3d 380, 387 (3d Cir. 2010). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). Moreover, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "utterly

7

discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 372, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Walsh v. Krantz, 386 F. App'x 334, 338 (3d Cir. 2010).

The movant has the initial burden of showing through the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits "that the non-movant has failed to establish one or more essential elements of its case." Connection Training Servs. v. City of Phila., 358 F. App'x 315, 318 (3d Cir. 2009). "If the moving party meets its burden, the burden then shifts to the non-movant to establish that summary judgment is inappropriate." Id. In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord. Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC. v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment."). However, "the court need only determine if the nonmoving party can produce admissible evidence regarding a

disputed issue of material fact at trial"; the evidence does not need to be in admissible form at the time of summary judgment. FOP v. City of Camden, 842 F.3d 231, 238 (3d Cir. 2016).

### III. Analysis

#### A. Failure to accommodate under the ADA

Defendants move for summary judgment asserting, among other arguments, that the record evidence fails to establish that Davis has a "disability" as defined by the ADA, and that Davis' accommodation request was unreasonable as a matter of law. The Court agrees on both points.

Under the ADA, "[t]he term 'disability' means, with respect to an individual--(A) a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include . . . working." Id., § 12102(2)(A).[5] Defendants assert that because "Ms. Davis repeatedly concedes that her mental afflictions were caused only by her supervisor, Jeff Dwyer," the "stress . . . that Ms. Davis experienced [is] not permanent or long-term," and therefore, Davis' impairment does not substantially limit her ability to work. (Moving Brief, p. 6-7)

---

[5] Davis testified that her "stress related disorder" "affected her ability to work." (David Dep. p. 104)

9

Davis almost concedes this point, asserting, "the LAD is broader . . . and offers greater protections in determining whether one is handicapped or . . . disabled. A condition not recognized as a disability under federal law has sometimes been deemed a handicap, or disability under the LAD.[6] . . . The most important difference between the New Jersey statute and the federal statute is that the LAD does not require that plaintiff's ailment limit a substantial [sic] major life activity." (Opposition Brief, p. 22-23; citations omitted).[7]

The Court agrees that the record evidence is insufficient to establish that Davis' mental impairment substantially limited her ability to work. "An impairment is a disability [under the ADA] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). "The term 'substantially limits' shall be construed broadly in favor of

---

[6] See generally, Royster v. New Jersey State Police, 227 N.J. 482, 499 (2017) ("We note that the ADA is a more constrictive statute than the LAD, as it requires an additional showing that the plaintiff's disability limits a major life activity. 42 U.S.C.A. § 12102(1)(A). The LAD's definition of physical disability is broader.").

[7] Davis misstates the legal standard. Under the ADA, a person's "impairment" must "substantially limit" a "major life activity." § 12102(1)(A). The ADA does not require the life activity to be both "major" and "substantial." Similarly, and most importantly for the purposes of the Court's decision, not any limitation will do. The limitation must be "substantial."

expansive coverage . . . . Nonetheless, not every impairment will constitute a disability within the meaning of [the ADA]." § 1630.2(j)(1)(i),(ii).[8]

Defendants correctly observe that this case is closely analogous to Maslanka v. Johnson & Johnson, Inc., 305 F. App'x 848 (3d Cir. 2008), which affirmed the district court's holding at summary judgment that Maslanka was not disabled under the ADA. In that case, Maslanka "suffer[ed] from a significant anxiety disorder and major depression associated with a stressful work situation," the remedy for which Maslanka's doctors "recommended that he work under a different supervisor or in a different department." Id. at 850. The Third Circuit held,

> [n]o reasonable juror could conclude from the record evidence that Maslanka's impairment was permanent or would have a long-term impact. According to the medical record notes of Drs. Reilly and Mehta, Maslanka's anxiety and depression was expected to last only so long as Fronius remained his supervisor or continued to give him bad evaluations.

---

[8] See also, McDonald v. Com. of Pa., Dep't of Pub. Welfare, Polk Ctr., 62 F.3d 92, 96 (3d Cir. 1995) ("Intermittent, episodic impairments are not disabilities, the standard example being a broken leg."); Third Circuit Model Jury Instructions for Employment Claims Under the Americans With Disabilities Act, 9.2.1 ADA Definitions – Disability (March 2018) ("Under the ADA, an impairment 'substantially limits' a person's ability to [work] if it prevents or restricts him from [working] compared to the average person in the general population. . . . Only impairments with a permanent or long-term impact are disabilities under the ADA.").

11

Id. at 852.⁹ The Court further explained, "Maslanka could perform the same job under a different supervisor, and thus could perform the same job at a different company." Id.

In Davis' case, the record also establishes that Davis' mental impairment was not long-term or substantially limiting. Davis undisputedly could perform her job so long as she was not supervised by Defendant Dwyer. Therefore, the record fails to establish that Davis' impairment was substantially limiting, thus Davis has failed to establish that she is disabled within the meaning of the ADA.¹⁰

Alternatively, under the ADA, an accommodation "request to be transferred away from individuals causing [a plaintiff] inordinate stress [is] unreasonable as a matter of law." Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 579 (3d Cir. 1998); see also Ozlek v. Potter, 259 F. App'x 417, 421 (3d Cir. 2007) ("this Court concludes that the holding in Gaul is dispositive

---

⁹ The EEOC regulations concerning what is substantially limiting under the ADA have changed since Mislanka. While the standard is now more favorable to plaintiffs, see § 1630.2(j)(1)(i) ("The term 'substantially limits' shall be construed broadly in favor of expansive coverage"), Davis' ADA claim nonetheless fails under this broader interpretation.

¹⁰ See also, Ashton v. AT&T, Co., 225 F. App'x 61, 67 (3d Cir. 2007) ("To the extent that Ashton claims that her impairment affected her ability to work, she cannot show that her ability to work is substantially limited if she can work at home but cannot work at the AT&T office because she experiences anxiety and stress related to her supervisor's treatment of her on the job site.").

of this issue. . . . Like the plaintiff in Gaul, Ozlek's only proposed accommodation was a transfer to a location that was outside of the supervision and control of the West Park management team. According to Gaul, this accommodation was 'unreasonable as a matter of matter of law.'"); Amoroso v. Bucks Cty. Court of Common Pleas, 2014 WL 1284791, at *9 (E.D. Pa. Mar. 27, 2014) ("Here, the accommodation requested by Plaintiff for her depression and anxiety was to be reassigned to a different supervisor. The Third Circuit has held that the Rehabilitation Act[11] does not require employers to accommodate employees by transferring them to another supervisor.") (citing Gaul and Ozlek).[12]

Davis testified that the only accommodation that she wanted was to no longer report to Jeff Dwyer. (Davis Dep. p. 100-01) Such accommodation is unreasonable as a matter of law. Thus, even if the record evidence established that Davis was disabled

---

[11] On this issue, the standards under the Rehabilitation Act and the ADA are "interchangeable." Ozlek, 259 F. App'x at 419 n.1.

[12] See generally, Alsup v. U.S. Bancorp, 2015 WL 224748, at *7 (E.D. Cal. Jan. 15, 2015) ("the overwhelming majority of courts have held a plaintiff may not couch a request for transfer as an accommodation for her disability, and many specifically hold that a transfer is an unreasonable accommodation as a matter of law.") (collecting cases, including Gaul and Ozlek).

under the ADA (which the Court holds it does not), Davis' failure to accommodate claim nevertheless fails.[13]

Accordingly, Defendants' Motion for Summary Judgment will be granted as to the ADA failure to accommodate claim, and Plaintiff's cross motion as to that claim will be denied.

**B. Retaliation under the ADA**

Davis asserts the circular argument that Defendants failed to accommodate her in retaliation for requesting an accommodation under the ADA. (Complaint ¶¶ 3, 40-45; Davis Dep. p. 99, 121; Opposition Brief, p. 38; Moving Brief, p. 27-28; Reply Brief, p. 21-22) The Court has held that Defendants were not obligated to accommodate Davis because she is not "disabled" under the ADA, and in any event, her accommodation request was unreasonable as a matter of law. It logically follows, then, that the failure to accommodate cannot be an adverse employment action as a matter of law, and therefore Davis cannot establish her ADA retaliation claim. See E.E.O.C. v. Allstate Ins. Co., 778 F.3d 444, 449 (3d Cir. 2015) ("A prima facie case of illegal retaliation [under the ADA] requires a showing of (1) protected employee activity; (2) adverse action by the employer either

---

[13] Davis moves for summary judgment asserting that Defendants failed to engage in the interactive process. (Moving Brief, p. 22) "If an employee insists on a single accommodation that is unreasonable as a matter of law, then the employee will be at fault for the breakdown in the interactive process." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 316 n.7 (3d Cir. 1999).

14

after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."). Accordingly, as to the ADA retaliation claim, Defendants' Motion for Summary Judgment will be granted and Plaintiff's cross motion will be denied.

**C. The remaining state law claims**

"The district courts may decline to exercise supplemental jurisdiction . . . if-- . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The District Court "'must decline' to exercise supplemental jurisdiction in such circumstances 'unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" Stone v. Martin, 720 F. App'x 132, 136 (3d Cir. 2017) (quoting Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000)).

As stated above, this case was removed solely on the basis of federal question jurisdiction-- i.e., Defendants (the parties invoking the Court's jurisdiction) have not asserted that this Court could also exercise diversity of citizenship jurisdiction over this suit. Indeed, it would appear likely under the facts of this case that one or both of the individual Defendants-- Jeffrey Dwyer or Daniel Dressel-- are citizens of New Jersey, as the summary judgment record discloses that both individual

Defendants worked in Allstate's New Jersey offices.  If either one of the individual Defendants is a citizen of New Jersey, complete diversity would be lacking, as Plaintiff Davis is a citizen of New Jersey, and therefore the sole basis for this Court's jurisdiction would be supplemental jurisdiction.  Under such circumstances, the Court would decline to exercise supplemental jurisdiction, as there is no affirmative justification for doing so in this case.

Accordingly, the Court will issue an Order to Show Cause why this Court should not decline to exercise supplemental jurisdiction over the remaining state law claims, and remand this suit to New Jersey Superior Court, Law Division.

**IV. <u>Conclusion</u>**

For the forgoing reasons, with respect to the ADA claims only, Defendants' Motion for Summary Judgment will be granted and Plaintiff's Cross-Motion for Summary Judgment will be denied.  Further, the Court will issue an Order to Show Cause why the Court should not decline to exercise supplemental jurisdiction over the remaining state law claims.

July 11, 2018                               s/ Renée Marie Bumb
                                            RENÉE MARIE BUMB
                                            UNITED STATES DISTRICT JUDGE